1
2
3
4
5
6
7

The Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PIERCE COUNTY, municipal corporation and
a political subdivision of the State of
Washington,

Plaintiff,

v.

NANCY J. FLAKE;
GUY V. FLAKE and JENNIFER FLAKE, a
married couple; and THE UNITED STATES OF
AMERICA,

Defendants.

Case No. 3:15-cv-05405-RBL

**UNITED STATES' REPLY TO
RESPONSE TO MOTION FOR
SUMMARY JUDGMENT**

**Note on Motions Calendar:
February 24, 2017**

The United States of America ("United States"), by and through its undersigned counsel,

respectfully submits its reply to Jennifer Flake's and Guy's Flake's (collectively "the Flakes")

U.S.' Reply to Response to Motion for Summary Judgment
(Case No.3:15-cv-05405-RBL)

1

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

1    Response to the United States' Motion for Summary Judgment[1]. In support of its Reply, the

2    United States incorporates the arguments raised in its Motion for Summary Judgment and

3    provides as follows:

4

5    I.    **Jennifer Flake Did Not Acquire Legal Interest in the Subject Property Until July 28, 2014**

6        The Flakes argue that Jennifer Flake acquired legal interest in the Subject Property

7    through her marriage to Guy Flake on February 24, 2005, because it was "the intention and

8    expectation of [the Flakes] that the property was marital property beginning at the date of

9    marriage…" Dkt. No. 19, at pp. 3, 4, 5.  The Flakes further argue that the letter dated December

10   22, 2003 ("the December 22, 2003, letter") from Guy Flake to Jennifer Campbell, indicating that

11   the Subject Property belongs to both Guy Flake and Jennifer Campbell, was "to establish Guy

12   Flake's promise to Jennifer as to future interest in the subject property and to serve as a last will

13   and testament of sorts at the time before marriage." Dkt. No. 19, at p 3. Finally, the Flakes argue

14   that verbal agreements between them made before the marriage also support their position that

15   Jennifer Flake acquired interest in the Subject Property on the date of marriage. Dkt. No. 19, at p.

16   5. In support of their arguments, the Flakes rely on various provisions of the Internal Revenue

17   Manual ("IRM"), and their interpretation of Washington State community property laws. Their

18   arguments are without merit.

19   //

20

21   [1] The Flakes' Response provides that they seek "alternative Summary Judgment" (Dkt. No. 19, at pp. 2, 8).  To the extent that the Flakes' Response is treated as a Cross-Motion for Summary Judgment, the United States provides

22   that this Reply will address all the relevant issued that pertain both to the United States' Motion for Summary Judgment and the Flakes' Cross-Motion for Summary Judgment.

23

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

### a. The Subject Property was Guy Flake's Separate Property Until July 28, 2014

The Flakes provide that under their understanding of Washington law, the assumption is that property owned by the couple is community property, and "[I]f one spouse claims the property should be classified as separate property, they must first prove it is not community property in order to change the law's default assumption. Guy Flake has never claimed this property is separate and in-fact had put it in writing before marriage that this property should be considered as co-owned." Dkt. No. 19, at 5. This argument is incorrect.

In Washington State, the character of property as separate or community property is determined at the date of acquisition of the property. *In re Estate of Borghi*, 167 Wash. 2d 480, 484, 219 P.3d 932, 935 (2009), *as corrected* (Mar. 3, 2010). Once the separate character of property is established, a presumption arises that it remained separate property in the absence of clear and convincing evidence to show an intent to transmute the property from separate to community property. *Id.,* at 484 & n. 4*; Guye v. Guye*, 63 Wash. 340, 352, 115 P. 731, 735 (1911).

Where real property is at issue, an acknowledged writing is required by the deed statute. *See Volz v. Zang,* 113 Wash. 378, 383-384, 194 P. 409 (1920) (where the Court provided that a change from separate property to community property can occur "when the parties intend such a change to take place and evidence this intention **by a conveyance conforming in all essentials to the requirements of the law affecting the transfer of real property.**" *(emphasis added)*); *See also* Harry M. Cross, The Community Property Law (Revised 1985), 61 Wash. L. Rev. 13, 102 & n. 485 (1986).  RCW § 64.04.010 provides in relevant part that "[e]very conveyance of real estate, or any interest therein … shall be by deed."  To qualify as a deed, an instrument must

U.S.' Reply to Response to Motion for Summary Judgment
(Case No.3:15-cv-05405-RBL)

3

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

1   comply with the requirements of RCW § 64.04.020 which provides that "[e]very deed shall be in

2   writing, signed by the party bound thereby, **and acknowledged by the party before some**

3   **person authorized by this act to take acknowledgments of deeds**." *(emphasis added).*

4   Therefore, a document that purports to transfer an interest in real property is not effective until it

5   is acknowledged by a notary public or other authorized person, as provided in RCW § 64.08.010.

6   *In re Betchan*, 524 B.R. 830, 832 (Bankr. E.D. Wash. 2015). RCW § 26.16.120 provides in

7   relevant part that spouses may enter into any agreement concerning the status or disposition of

8   the whole or any portion of the community property to take effect upon the death of either, but

9   "such agreement may be made at any time **by both spouses** … **by the execution of an**

10  **instrument in writing under their hands and seals, and to be witnessed, acknowledged and**

11  **certified in the same manner as deeds to real estate are required to be, under the laws of**

12  **the state**…"  Further, a joinder in a contract, mortgage or deed by husband and wife prior to

13  marriage is insufficient to convert property into community property, and the status of real

14  property cannot be changed by oral agreement of the spouses. *In re Verbeek's Estate*, 2 Wash.

15  App. 144, 155-156, 467 P.2d 178, 186 (1970) (internal citations omitted). As such, a transfer in

16  real property from separate property to community property can be done through a quit claim

17  deed or other real property transfer, or a properly executed community property agreement. *See*

18  *also Estate of Borghi*, 168 Wash. 2d at 485; *In re Estate of Verbeek,* 2 Wash.App. 144.

19      Here, Guy Flake acquired title to the Subject Property through Statutory Warranty Deed

20  on or about June 7, 1994. Dkt. No. 17, at p. 4, ¶ 5. Pursuant to a divorce decree dated June 27,

21  1995, in the case of *Nancy Jean Flake v. Guy Vernon Flake*, in the Fourth District Court for Utah

22  County, State of Utah, Civil Case No. 954401360 DA, Guy Flake was awarded ownership of the

23  Subject Property. Dkt. No. 17, at p. 4, ¶ 6. Guy Flake and Jennifer Flake were married on

U.S.' Reply to Response to Motion for Summary Judgment
(Case No.3:15-cv-05405-RBL)                                              4                    **U.S. DEPARTMENT OF JUSTICE**
                                                                                             Tax Division, Western Region
                                                                                             P.O. Box 683
                                                                                             Washington, D.C.  20044
                                                                                             Telephone: 202-514-6056

1    February 24, 2005. Dkt. No. 17, at p. 4, ¶ 7.  Therefore, it is clear that Guy Flake acquired the

2    Subject Property prior to his marriage to Jennifer Flake, and as such a presumption that it

3    remained his separate property arose. Because the Subject Property is real property, in order to

4    change that presumption, an acknowledged writing was required. The mere fact that Guy Flake

5    and Jennifer Flake were married on February 24, 2005, did not change the character of the

6    Subject Property from Guy Flake's separate property to the Flakes' community property.

7           The Flakes' reliance on the December 22, 2003 letter to establish the intent to provide

8    Jennifer Flake with a 50% interest in the Subject Property is also misguided. First, the December

9    22, 2003 letter from Guy Flake to Jennifer Campbell fails to satisfy the requirements of a deed

10   under RCW § 64.04.020, and is therefore not a deed for purposes of conveyance of real estate

11   under RCW § 64.04.010. While the letter is in writing, and signed by Guy Flake, it does not meet

12   the acknowledgment requirements of RCW §§ 64.04.020, 64.08.010.  Second, the letter fails to

13   satisfy the requirements of a community property agreement under RCW § 26.16.120. The letter

14   was written prior to the Flakes' marriage, was only signed by Guy Flake, rather than Guy Flake

15   and Jennifer Flake, and was not witnessed, acknowledged, and certified as a real property deed in

16   accordance with RCW §§ 64.04.020, 64.08.010. *See Bosone v. Bosone*, 53 Wash. App. 614, 618,

17   768 P.2d 1022, 1024–25 (1989); *In re Verbeek's Estate*, 2 Wash. App. at 155-156.  As such, the

18   December 22, 2003, letter was not a proper conveyance of real property and did not convert the

19   Subject Property from Guy Flake's separate property to the Flakes' community property.

20          As to any verbal agreements that the Flakes may have had regarding the conversion of

21   the Subject Property from Guy Flake's separate property to the Flakes' community property,

22   those are also insufficient to satisfy the requirements of Washington State Law for conversion of

23   real property from separate property to community property. *See In re Verbeek's Estate*, 2 Wash.

U.S.' Reply to Response to Motion for Summary Judgment
(Case No.3:15-cv-05405-RBL)                                      5                    **U.S. DEPARTMENT OF JUSTICE**
                                                                                      Tax Division, Western Region
                                                                                      P.O. Box 683
                                                                                      Washington, D.C.  20044
                                                                                      Telephone: 202-514-6056

1    App. at 155-156.

2    Finally, it should be noted that even when a spouse's name is included on a deed or title at

3    the direction of the separate property owner spouse, this does not evidence an intent to transmute

4    separate property into community property, but merely an intent to put both spouses' names on

5    the deed or title. *See In re Estate of Borghi*, 167 Wash. 2d at 489. However, assuming that here,

6    Guy Flake had the intent of transferring the Subject Property from separate property to

7    community property, that did not take effect until July 28, 2014, when a properly executed Quit

8    Claim Deed was recorded with the County Auditor of Pierce County, and transferred interest in

9    the Subject Property from Guy V. Flake to Guy Flake and Jennifer Flake.

10    Summarily, the Subject Property was Guy Flake's separate property until July 28, 2014,

11    and Jennifer Flake did not acquire legal interest in the Subject Property until that date.

12    
### b. Jennifer Flake's Payment of Utility Bills does not Change the Character of the Subject Property from Separate Property to Community Property

13    
14    In support of their argument that the Subject Property was community property, the

15    Flakes provide that Jennifer Flake contributed to the payment of utility expenses on the property

16    from her separate funds as well as the Flakes' joint bank account. Dkt. No. 19, at pp. 3-4; Dkt.

17    No. 19-1, at pp. 14-15.

18    In Washington, an **increase in the value** of separate property that is attributable to

19    community funds or labors, entitles the community to a share of the increase in value due to

20    inflation in proportion to the value of **community contributions to the property**, and may

21    create a right of reimbursement by the community. *Elam v. Elam*, 97 Wash. 2d 811, 816–17, 650

22    P.2d 213, 216 (1982); *see also Lindemann v. Lindemann*, 92 Wash. App. 64, 69–70, 960 P.2d

23    966, 969–70 (1998); *Miracle v. Miracle*, 101 Wash. 2d 137, 139, 675 P.2d 1229, 1230–31

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

1    (1984).  However, here, the Flakes did not show any expenses paid by Jennifer Flake or the

2    community, towards the Subject Property, other than payment of utilities. Utility payments do

3    not contribute to the increase in the value of the property, but are rather merely living expenses.

4    Consequently, Jennifer Flake's payment of utility expenses did not change the nature of the

5    Subject Property from Guy Flake's separate property to the Flakes' community property.

6

        **II.      The United States' Tax Liens Attach to Guy Flake's Interest in the Subject
7                  Property**

8            As detailed in the United States' Motion for Summary Judgment, pursuant to 26 U.S.C.

9    §§ 6321 and 6322, on the various dates of assessment, valid liens in favor of the United States

10   arose against Guy Flake and attached to all of his property and rights to property, whether real or

11   personal. Additionally, in accordance with the provisions of 26 U.S.C. § 6323(f), the United

12   States perfected its liens against purchasers, holders of security interests, mechanic's lienors,

13   judgment lien creditors, and other specified lien holders when a duly authorized delegate of the

14   Secretary of the Treasury properly filed and recorded Notices of Federal Tax Liens with the

15   County Auditor for Pierce County against Guy Flake on April 25, 2011 for the taxable years

16   1997, 1998, and 1999; and on September 1, 2010 for the taxable year 2004. Dkt. No. 17, at pp. 6-

17   8.

18           Also as detailed in the United States' Motion for Summary Judgment, even if the

19   December 22, 2003, letter satisfied the requirements for a proper conveyance of real property,

20   because it was not recorded with Pierce County recording office, it is void against any future

21   purchasers.  RCW § 65.08.070 provides in relevant part that a **conveyance in real property** that

22   is not recorded in the office of the recording officer where the property is situated, is void against

23   any subsequent purchaser or mortgagee *(emphasis added)*. RCW § 65.08.060 defines

U.S.' Reply to Response to Motion for Summary Judgment             7          **U.S. DEPARTMENT OF JUSTICE**
(Case No.3:15-cv-05405-RBL)                                                   Tax Division, Western Region
                                                                             P.O. Box 683
                                                                             Washington, D.C.  20044
                                                                             Telephone: 202-514-6056

1  "conveyance" to include any written instrument which any estate or interest in real property is

2  created, transferred, mortgaged or assigned or by which the title to any real property may be

3  affected.  Here, the December 22, 2003, letter was never recorded with the Pierce County

4  recording office, and as such is void against any future purchasers.  The IRS on the other hand,

5  recorded its Notices of Federal Tax Lien and thus protected its interest against all future

6  purchasers on September 1, 2010 and April 25, 2011. Jennifer Flake had no interest in the

7  Subject Property at the time the IRS liens attached to it. Dkt. No. 17, at pp. 8-9.

8        The transfer of the Subject Property from Guy Flake to Guy Flake and Jennifer Flake did

9  not affect the IRS' lien. "The attachment of a federal tax lien 'cannot be extinguished (assuming

10  property filing and the like) simply by transfer or conveyance of the interest.'" *United States v.*

11  *Rodgers*, 461 U.S. 677, 691 n.16 (1983); *United States v. Bess,* 357 U.S. 51, 57 (1958). The

12  transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of

13  the very nature and essence of a lien, that no matter into whose hands the property goes, it passes

14  cum onere * * *.' *Bess,* 357 U.S. at 57 (citing *Burton v. Smith*, 38 U.S. 464, 483 (1839)).

15        Here, as discussed above, the United States recorded its Notices of Federal Tax Liens

16  against Guy Flake on September 1, 2010 and April 25, 2011. At that time, Jennifer Flake had no

17  title or legal ownership in the Subject Property. On July 28, 2014, after the Notices of Federal

18  Tax Liens were recorded, Guy Flake transferred his interest in the Subject Property to himself

19  and Jennifer Flake. The transfer of the Subject Property from Guy Flake to himself and Jennifer

20  Flake had no impact on the federal tax liens because it occurred after all of the Notices of Federal

21  Tax Lien were filed. Guy Flake and Jennifer Flake took the Subject Property subject to

22

23

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

preexisting federal tax liens. Consequently, the United States liens attach to the Subject Property

and the United States is entitled to 100% of the interplead funds[2].

### III.      The Flakes' Reliance on the IRM is Misguided

In support of their arguments, the Flakes rely on several provisions of the Internal

Revenue Manual ("IRM").  This reliance is misguided.  The Ninth Circuit previously held that

the IRM does not have the force of law and does not confer rights on taxpayers. *Fargo v.*

*Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006); *see also Carlson v. United States,* 126 F.3d

915, 922 (7th Cir.1997); *Marks v. Comm'r,* 947 F.2d 983, 986 n. 1 (D.C.Cir.1991) (holding that

"[i]t is well-settled ... that the provisions of the [Internal Revenue M]anual are directory rather

than mandatory*,* are not codified regulations, and clearly do not have the force and effect of

law"; *Valen Mfg. Co. v. United States,* 90 F.3d 1190, 1194 (6th Cir.1996); *United States v.*

*Horne,* 714 F.2d 206, 207 (1st Cir.1983); *Einhorn v. DeWitt,* 618 F.2d 347, 349-50 (5th

Cir.1980).

---

[2] Further, even if it the December 22, 2003 letter satisfied the requirements of a real estate conveyance under RCW §§ 64.04.010, 64.04.020, 64.08.010, and 26.16.120, and was properly recorded with the Pierce County recording office in accordance with RCW § 65.08.070, it should still be set aside as fraudulent conveyance in accordance with the provisions of the Uniform Fraudulent Transfer Act, RCW 19.40.011, et seq.  At the time Guy Flake signed and dated the December 22, 2003, letter, he already had income tax liabilities for the taxable years 1997, 1998, and 1999. The Internal Revenue Service is deemed a creditor of a taxpayer as of the date that the obligation to pay income taxes accrues, even if the tax liabilities are unassessed, and in the Ninth Circuit this is at the end of the taxable year. *See Edelson v. Commissioner*, 829 F.2d 828, 833-34 (9th Cir. 1987). In Washington, "creditor" is defined as a person who has a claim, and "claim" is very broadly defined to mean "a right to payment, whether or not the right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." See RCW § 19.40.011(3), (4). Consequently, in relation to the 1997, 1998, and 1999 taxable years, the IRS was a creditor of Guy Flake on December 31, 1997, December 31, 1998, and December 31, 1999, respectively. The Washington Uniform Fraudulent Transfer Act prohibits the transfer of property made with actual intent to hinder, delay or defraud any creditor. RCW 19.40.041(a)(1). At the time of the December 22, 2003, letter, Guy Flake was subject to liabilities for unpaid income taxes for the taxable years 1997, 1998, and 1999, and the IRS was already a creditor.

U.S.' Reply to Response to Motion for Summary Judgment
(Case No.3:15-cv-05405-RBL)                                        9                                        **U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

1    Further, even if the IRM conferred any rights on the Flakes, their reliance on the specific

2    IRM provisions, is incorrect. IRM § 25.18.1.2.20, specifically addressed situations "when

3    property **is acquired as community property**." *(emphasis added)* (Dkt. No. 19, at 6). As

4    discussed above, the Subject Property was acquired as Guy Flake's separate property, and as

5    such this IRM provision does not apply. IRM §§ 25.18.1.2.22 and 25.18.1.2.23 address a

6    situation of "[m]ixing or commingling separate property with community property will

7    transmute separate property into community property unless the separate property component

8    can be traced." (Dkt. No. 19, at 6-7).  As discussed above, any contributions made by Jenifer

9    Flake or the marital community towards the payment of utility expenses, did not increase the

10   value of the Subject Property, and should not be considered to have changed the nature of the

11   Subject Property from separate property to community property. Finally, IRM § 25.18.1.2.26

12   addresses contracts between spouses and provides that: "Community property states have created

13   laws allowing spouses to contract out of the application of normal community property laws".

14   IRM § 25.18.1.2.26(2)(a) cites to two cases interpreting Washington State law, *Union Securities*

15   *Co. v. Smith*, 93 Wash. 115, 160 P. 304 (1916), and *Beakley v. Bermerton*, 5 Wash. 2d 670, 105

16   P.2d 40 (1940), for the proposition that some states recognize oral agreements, but will closely

17   scrutinize a claim that one exists. However, both these cases address property that was acquired

18   by the spouses after marriage. Whereas, here, as discussed above, Guy Flake acquired interest in

19   the Subject Property prior to his marriage to Jennifer Flake. Therefore, the IRM provisions that

20   the Flakes cite in support of their argument are inapplicable.

21   **IV.    Statements of an Employee of the IRS are not Binding on the Government**

22   In their Response, the Flakes refer to an email received by Pierce County from Rosary

23   Tanner, an employee of the IRS providing that the IRS's lien and levy attach to 50% of the

U.S.' Reply to Response to Motion for Summary Judgment         10          **U.S. DEPARTMENT OF JUSTICE**
(Case No.3:15-cv-05405-RBL)                                                Tax Division, Western Region
                                                                           P.O. Box 683
                                                                           Washington, D.C.  20044
                                                                           Telephone: 202-514-6056

1   proceeds that are the subject of this interpleader action. Dkt. No. 19, at p. 8; Dkt. No. 19-1, at p.

2   10. However, such statements by an IRS employee are not binding on the IRS.

3          In *Sidell v. Commissioner of Internal Revenue*, 225 F.3d 103, 111 (1st Cir. 2000), the

4   Court provided that:

5          "[T]he IRS must speak with a single voice, that is, through formal statements
           of policy such as regulations or revenue rulings. *See Connecticut Gen. Life*
6          *Ins. Co. v. Commissioner*, 177 F.3d 136, 145 (3d Cir. 1999). Accordingly,
           statements by individual IRS employees cannot bind the Secretary. *See*
7          *Armco, Inc. v. Commissioner*, 87 T.C. 865, 867 (1986); *see generally Irving*
           *v. United States*, 162 F.3d 154, 166 (1st Cir. 1998) (en banc) ("Courts
8          customarily defer to the statements of the official policymaker, not others,
           even though the others may occupy important agency positions."). Because
9          these internal memoranda represent the personal views of the authors, not the
           official position of the agency, they do not figure in our decisional calculus.
10         *See Honeywell Inc. v. United States*, 228 Ct. Cl. 591, 661 F.2d 182, 185-86
           (Ct. Cl. 1981).
11
           Consequently, any statements made by an IRS employee are not binding on
12
     the IRS and the Flakes may not rely on them in this proceeding.
13

14   **V.      Conclusion**

15         For the forgoing reasons, and the reasons stated in the United States' Motion for

16   Summary Judgment, the United States respectfully requests that the Court grant its Motion for

17   Summary Judgment, deny the Flake's Cross-Motion for Summary Judgment, and order the clerk

18   of the Court to disburse the interplead funds in the amount of $161,904 to the United States.

19   //

20

21   //

22

23   //

U.S. DEPARTMENT OF JUSTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

1    Respectfully submitted this 23rd day of February, 2017.

2

3                                                    DAVID A. HUBBERT
                                                     Acting Assistant Attorney General

4
                                                     */s/ Rika Valdman*
5                                                    RIKA VALDMAN
                                                     Trial Attorney, Tax Division
6                                                    U.S. Department of Justice
                                                     P.O. Box 683
7                                                    Washington, D.C.  20044
                                                     202-514-6056 (v)
8                                                    202-307-0054 (f)
                                                     rika.valdman@usdoj.gov
9
                                                     *Of Counsel:*
10
                                                     ANNETTE L. HAYES
11                                                   United States Attorney
                                                     Western District of Washington
12
                                                      *Attorneys for the United States of America*
13

14

15

16

17

18

19

20

21

22

23

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on this 23rd day of February, 2017, I filed the foregoing document

3   with the Court through the Court's CM/ECF system, which will send notification of such filing

4   to the following:

5       **Kimberley Demarco**
        kdemarc@co.pierce.wa.us
6       *Attorney for Plaintiff*

7       **Guy V. Flake**
        gvflake@msn.com
8       *Defendant*

9       I further certify that on the same date, I caused a true and complete copy of the foregoing

10  document(s), to be served by United States Postal Service to the following non-CM/ECF

11  participant:

12      **Nancy Flake**
        1783 W 1100 N
13      Pleasant Grove, UT 84062-4030
        *Defendant*

14
        **Jennifer Flake**
15      5126 NE 102nd Ave.
        Portland, OR 97220-1104
16      *Defendant*

17                                          */s/ Rika Valdman*
                                            RIKA VALDMAN
18                                          Trial Attorney
                                            Civil Trial Section, Western Region

19

20

21

22

23

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-514-6056